ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 FEB -8 PM 1: 26

CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| BETTY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 306-077 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Betty Brown ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability resulting from disorders of the back, dating back to March 28, 1992, Plaintiff applied for SSI on April 8, 2002. Tr. ("R."), p. 60. The Social Security Administration denied Plaintiff's original claim, and her request for reconsideration. R. 31-33 & 35-37. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 38. On March 14, 2005, Plaintiff, who was represented by counsel, appeared

and testified, along with a vocational expert ("VE"). R. 408-39. Thereafter, the ALJ rendered an unfavorable decision dated April 25, 2005. R. 11-26.

Applying the five step sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since filing this claim.

2. The claimant's low back pain is considered a "severe" impairment based on the requirements in the Regulations 20 CFR § 416.920(c).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965). However, the claimant retains the residual functional capacity to perform light exertional work activities that never require climbing ladders, ropes, or scaffolding. The claimant can occasionally climb ramps/stairs, balance, stoop, and crouch for no more than 2 ½ hours per eight-hour workday.

5. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making in conjunction with a VE's testimony, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a photocopying machine operator, collator operator, and cashier. Therefore, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(g)).

R. 25-26.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 5-7. Having failed to convince the AC to review her case, Plaintiff then filed the above-captioned case, requesting a reversal

or remand of that adverse decision. Plaintiff now argues that the ALJ improperly discounted the opinions of two consultative examiners because: (1) the ALJ improperly determined that the opinions lacked objective support, and (2) the ALJ's determination concerning Plaintiff's malingering is not supported by the substantial evidence.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the

3

claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues that the ALJ "improperly discounted significant evidence from the various consultative examiners, namely Dr. Fried and Dr. Kulkarni, that showed that [Plaintiff] was far more limited than the ALJ acknowledged in his decision." (Doc. no. 7, p. 10). The Commissioner counters that the ALJ properly discounted the opinions of Dr. Fried and Dr. Kulkarni because "[these opinions] lacked objective support in the evidentiary record, and were also contradicted by evidence that Plaintiff was a chronic malingerer." (Doc. no. 9, p. 8). The Commissioner has the better argument.

4

### A. The ALJ's Decision to Discount the Opinions of Dr. Fried and Dr. Kulkarni Based on the Determination that the Opinions Lacked Objective Support

The Court first turns its attention to Plaintiff's allegation of error concerning the ALJ's determination that the opinions of Dr. Fried and Dr. Kulkarni lacked objective evidentiary support. In support of this argument, Plaintiff contends that, because the ALJ failed to consider the "multiple positive findings" of Dr. Kulkarni and Dr. Fried, the decision to discount their opinions was improper. (Doc. no. 7, pp. 12-14; doc. no. 10, p. 2). Plaintiff also argues that Dr. Fried's opinion was improperly discounted because the ALJ mischaracterized Dr. Fried's assessment of Plaintiff's condition, and thus, incorrectly determined that it lacked objective support. (Doc. no. 7, p. 12; doc. no. 10, p. 2). The Commissioner generally counters that the ALJ correctly concluded that the opinions of Dr. Fried and Dr. Kulkarni were unsupported by any objective medical evidence. (Doc. no. 9, p. 10).

#### 1. Consideration of Dr. Fried's and Dr. Kulkarni's "Positive Findings"

Plaintiff challenges the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni because the ALJ failed to consider their "multiple positive findings." (Doc. no. 7, pp. 12-14; doc. no. 10, pp. 2-3). In support of this argument, Plaintiff explains that Dr. Fried and Dr. Kulkarni found that she exhibited limited motion in her neck, back, and hips, as well as "positive straight leg raising bilaterally," and that Dr. Kulkarni found that she exhibited impaired sensation in her extremities and balance difficulties. (Doc. no. 7, pp. 12-14). Plaintiff maintains that the ALJ's decision fails to mention these "positive findings," and therefore, the ALJ improperly discounted the opinions of Dr. Fried and Dr. Kulkarni. (Id.).

5

Contrary to Plaintiff's contention, the ALJ considered the totality of Dr. Fried's and Dr. Kulkarni's opinions, including various "positive findings" noted in support of their opinions that Plaintiff was more restricted than the ALJ determined. Indeed, the ALJ explained that Dr. Fried found, *inter alia*, that Plaintiff exhibited atrophy, some mild loss of grip strength in both hands, difficulty pushing and pulling, some narrowing of the L3-L4 disc space, superior acetabular spurs bilaterally, mild arthritis, mild arthritic changes in the right hand, and limited shoulder motion. R. 18. Furthermore, the ALJ noted that Dr. Kulkarni found, *inter alia*, that Plaintiff exhibited great difficulty reading large print on the vision chart, considerable restriction of all cervical spine movements, bilateral limitations during straight leg raising, and difficulty balancing. R. 18-19. Although the ALJ may not have specifically mentioned every "positive finding" made by Dr. Fried and Dr. Kulkarni, the ALJ clearly considered several "positive findings" cited in support of their opinions. Nevertheless, these findings and opinions were discredited because, as discussed in detail herein, the ALJ determined that they lacked objective support and that other evidence established that Plaintiff was malingering. R. 21 & 23. Simply put, the ALJ's decision clearly indicates that he considered the totality of Dr. Fried's and Dr. Kulkarni's opinions, and thus, Plaintiff's allegation of error concerning the ALJ's failure to discuss "positive findings" is without merit.

### 2.    Characterization of Dr. Fried's Assessment

Plaintiff also challenges the ALJ's decision to discount the opinion of Dr. Fried on the grounds that the ALJ allegedly mischaracterized Dr. Fried's assessment. (Doc. no. 7, p. 12; doc. no. 10, p. 2). Plaintiff explains, "[T]he ALJ chided Dr. Fried for concluding that [Plaintiff] 'had carpal tunnel syndrome' despite normal and near normal examinations.

However, an examination of Dr. Fried's report reveals that he concluded that [Plaintiff] had 'a history of carpal tunnel syndrome.'" (Id. (internal citations omitted)). According to Plaintiff, the ALJ's misstatement of Dr. Fried's assessment concerning carpal tunnel syndrome lead him to improperly determine that Dr. Fried's opinion lacked objective support. (Id.).

First, it should be noted that the ALJ's decision to discount Dr. Fried's opinion was not based solely on Dr. Fried's assessment concerning carpal tunnel syndrome. Rather, the ALJ mentioned the assessment in support of the determination that Dr. Fried's opinion was influenced by subjective complaints. R. 21. As such, whether Dr. Fried opined that Plaintiff "had" or "has a history of" carpal tunnel syndrome is not dispositive of whether Dr. Fried's opinion was properly discounted.[1] Indeed, as discussed in detail herein, the lack of objective support, coupled with the determination that "the evidence clearly shows that [Plaintiff] has been malingering for years," resulted in the ALJ's decision to discount Dr. Fried's opinion. R. 23. Therefore, Plaintiff's allegation of error, as it relates to the characterization of Dr. Fried's assessment concerning carpal tunnel syndrome, is also without merit.

In sum, the ALJ considered the totality of Dr. Fried's and Dr. Kulkarni's opinions, including various "positive findings." Furthermore, it does not appear that the ALJ mischaracterized Dr. Fried's assessment concerning carpal tunnel syndrome, which was not

---

[1] Plaintiff correctly notes that the ALJ explained, "Despite normal and near normal examinations, Dr. Fried concluded [Plaintiff] *had* carpal tunnel syndrome . . . ." R. 21 (emphasis added). In the "assessment" portion of Dr. Fried's Report, he stated, "[Plaintiff] *has a history* of carpal tunnel syndrome." R. 357 (emphasis added). Although it is debatable whether Dr. Fried concluded that Plaintiff suffered from carpal tunnel syndrome at the time of his examination, it does not appear that the ALJ mischaracterized Dr. Fried's assessment. Simply put, Plaintiff's attempt to cite error based upon the ALJ's verbiage is unpersuasive.

7

the sole basis for the ALJ's decision to discount Dr. Fried's opinion. Therefore, Plaintiff's allegation of error, concerning the ALJ's determination that the opinions of Dr. Kulkarni and Dr. Fried lacked objective evidentiary support, is without merit.

**B.  The ALJ's Decision to Discount the Opinions of Dr. Fried and Dr. Kulkarni Based on the Determination that Plaintiff was Malingering**

Next, the Court turns its attention to the allegation of error concerning the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni based on the determination that Plaintiff was malingering. Plaintiff argues that "the ALJ's indictment of [Plaintiff] as a chronic malingerer is simply not supported by the medical evidence of the record" and that "it simply does not provide a basis for blanketly dismissing the opinions of Drs. Fried and Kulkarni." (Doc. no. 7, p. 13). However, as the Commissioner argues (doc. no. 9, p. 8), and the Court agrees, the ALJ properly discounted the opinions of Dr. Fried and Dr. Kulkarni, which were inconsistent with the majority of the medical evidence and undermined by evidence of Plaintiff's chronic malingering.

**1.  Determination that Plaintiff was Malingering**

Plaintiff challenges the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni based on the determination that she was malingering. In support of this argument, Plaintiff submits that the ALJ's malingering determination is not supported by Plaintiff's medical records. (Doc. no. 7, p. 13; doc. no. 10, pp. 4-5). Furthermore, Plaintiff argues that no physician ever concluded that she was in fact a malingerer and that, for the ALJ's determination to be accurate, the Court would have to unreasonably assume that she fooled both Dr. Fried and Dr. Kulkarni. (Id.). The Commissioner counters that the ALJ properly discounted the opinions of Dr. Fried and Dr. Kulkarni and afforded controlling weight to the

8

opinions of the State Agency consultants because the substantial evidence in Plaintiff's treating and consultative source records demonstrates that Plaintiff is a chronic malingerer. (Doc. no. 9, pp. 10-13).

When discounting the opinions of Dr. Fried and Dr. Kulkarni, the ALJ noted,

> In reviewing the findings and opinions of the State Agency medical consultants, the record reflect[s] that the consultants had the benefit of reviewing results from medical and laboratory tests and medical records from [Plaintiff] from a number of different medical sources, including treating and examining physicians and psychologist. Due to the variety of medical [] opinions and the time period covered by them, the State Agency consultants could construct a detailed, longitudinal picture of [Plaintiff's] impairments.[2]
>
> . . . .
>
> The State Agency's opinion is further supported by the opinion of Dr. Goodman who indicated that [Plaintiff] had complaints all over during a [straight leg raise] as discussed earlier. Dr. Goodman diagnosed [Plaintiff] with chronic pain syndrome and **questionable malingering**. However, other physicians have been more positive in their diagnosis of malingering. Furthermore, Dr. Hardman mentioned **numerous Waddell signs indicating physical exam would be very unreliable, and consideration for non-organic causes must be considered**. Dr. Hardman opined that he saw very little that would suggest a physiologically neurological cause for [Plaintiff's] symptoms.

R. 22-23 (internal citations omitted). An examination of these medical records noted by the ALJ supports the decision to discount the opinions of Dr. Fried and Dr. Kulkarni based upon the determination that Plaintiff was malingering.

---

[2] On July 15, 2002, Dr. K Esna-Ashari, State Agency medical consultant, reviewed Plaintiff's medical records and determined that she retained the residual functional capacity to perform light exertional work. R. 324-31. Specifically, Dr. Esna-Ashari determined that Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; sit, stand, or walk six hours in a work-day; frequently kneel and crawl; occasionally climb ramps or stairs; occasionally balance, stoop, or crouch; and never climb ladders, ropes, or scaffolds. R. 325-26. On November 22, 2002, Dr. Richard H. Johnson, State Agency medical consultant, examined Plaintiff's medical records and affirmed Dr. Esna-Ashari's assessment. R. 331.

9

As the ALJ correctly noted, Dr. Louise Goodman first diagnosed Plaintiff with chronic back pain on October 15, 1998. R. 16 & 147. On June 21, 1999, Dr. Goodman indicated that Plaintiff suffers from chronic pain syndrome and noted, "? Malingering." R. 16 & 146. Furthermore, Dr. Goodman explained that Plaintiff would not cooperate with the examination and noted, "[Plaintiff's] presentation becomes more dramatic on straight leg raises and I really can not say that they are positive[,] but she complains of all over pain during this maneuver." R. 16 & 146.

Dr. Michelle D. Carvey, a neurosurgeon, first examined and diagnosed Plaintiff as having chronic low back pain on January 7, 2002. R. 17 & 289. Dr. Carvey also indicated that she would refer Plaintiff back to Dr. Donald Rosenbaum, an orthopedist, for further evaluation.[3] R. 289. On February 5, 2002, Dr. Carvey examined Plaintiff and noted that, although Plaintiff's MRI suggested degenerative disc disease, those findings do not clearly explain her symptoms of lower back pain and that Plaintiff would not benefit from surgery. R. 17 & 287.

Dr. Joseph Hardman examined Plaintiff on March 28, 2002 after she complained about pain in her low back and extremities. R. 16 & 275-78. Although formal testing of Plaintiff's back suggested chronic pain syndrome, Dr. Hardman also noted, "Waddell signs indicating physical exam will be very unreliable, and consideration for nonorganic causes must be considered. I see very little that would suggest a neural tension sign. On review of

---

[3]On May 6, 2002, Dr. Rosenbaum reported, "[Plaintiff] has been seen by a neurosurgeon, physiatrist, and orthopaedist, none who felt she could be helped by [treatment]. On a recent eval[uation] from a physiatrist, there were many Waddell signs and some suspicion that this may not be somatizing secondary to depression." R. 17 & 280.

her MRI, I see no neural foraminal compromise." R. 16 & 277-78. Furthermore, Dr. Hardman opined, "I have very little reason to think that an epidural would be helpful . . . ." R. 17 & 278.

Dr. John C. Whitley, a licensed clinical psychologist, examined Plaintiff on October 1, 2004. R. 19-20 & 364-72. During this examination, the Miller Forensic Assessment of Symptoms Test ("MFAST") was performed to test the probability that Plaintiff was malingering. R. 20 & 367-68. Dr. Whitley concluded, *inter alia*, that "there is reason to believe an exaggeration of symptoms was presented." R. 20 & 368.

Dr. Randall R. Ozment examined Plaintiff, who complained about double vision, on October 4, 2004. R. 17-18 & 350. Dr. Ozment diagnosed small exotropia. R. 18 & 350. Notably, Dr. Ozment stated, "During the examination[,] [Plaintiff] create[d] a false accommodative spasm, which I think is intentional." R. 17 & 350. Furthermore, Dr. Ozment opined that Plaintiff did not have significant double vision. R. 18 & 350. Ultimately, Dr. Ozment opined, "I think [Plaintiff] should see better than what she saw for us at distance and near based on the lack of objective findings on her examination." R. 18 & 351.

Contrary to Plaintiff's contention, her medical records support the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni based on the determination that she was malingering. As set forth above, Dr. Goodman, who examined Plaintiff on several occasions, noted questionable malingering and indicated that she could not verify Plaintiff's complaints of pain. Furthermore, Dr. Carvey reported that his findings did not explain Plaintiff's symptoms; Dr. Hardman explained that his examination was unreliable due to "Waddell signs"; Dr. Whitley concluded that the MFAST suggested malingering; and Dr. Ozment opined that Plaintiff created a false spasm and that Plaintiff's vision should be better than

11

reported. Although none of these physicians state with complete certainty that Plaintiff was malingering, their objective findings and test results provided the ALJ with substantial evidence in support of the determination that Plaintiff was malingering.[4] Therefore, the Court finds that Plaintiff's medical records support the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni based on the determination that she was malingering.

### 2. No Requirement to "Re-Contact" Dr. Fried or Dr. Kulkarni

Plaintiff also challenges the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni, based on the determination that she was malingering, because the ALJ did not re-contact Dr. Fried or Dr. Kulkarni. In support of this argument, Plaintiff maintains that neither Dr. Fried nor Dr. Kulkarni expressed concern that she was malingering. (Doc. no. 7, p. 14; doc. no. 10, p. 5). Thus, Plaintiff argues that, if the ALJ questioned whether she was malingering, the ALJ should have solicited an opinion on that topic from Dr. Fried and Dr. Kulkarni. (Id.). The Commissioner counters that "SSR 96-5p only requires re-contact when both the record fails to support a treating source's opinion and the basis of the treating source's opinion is unascertainable from the record." (Doc. no. 9, p. 13). Consequently, the Commissioner submits that, because the ALJ interpreted the evidence and concluded that the opinions of Dr. Fried and Dr. Kulkarni were merely grounded in Plaintiff's malingering, the ALJ was not required to re-contact them. (Id.).

---

[4]Plaintiff also submits, "[T]he Commissioner never consider[ed] the possibility that [her] conditions worsened in the two year period from the records cited to the time of [Dr. Fried's and Dr. Kulkarni's] examinations" in September and October 2004. (Doc. no. 10, p. 3). However, as previously discussed, when discounting the opinions of Dr. Fried and Dr. Kulkarni, the ALJ cited, *inter alia*, the records of Dr. Whitley and Dr. Ozment, who examined Plaintiff in October 2004 and noted findings suggesting that Plaintiff was malingering. R. 17-21 & 23. Therefore, Plaintiff's argument concerning the ALJ's alleged failure to consider the possibility that her condition worsened is unpersuasive.

When evaluating opinions related to SSI applications, the Commissioner considers whether the evidence in the record is consistent and sufficient to make a disability determination. 20 C.F.R. § 416.927(c). If after weighing the evidence the Commissioner cannot determine whether a disability exists, the Commissioner will seek additional information, and recontact treating or other examining sources. Id. On this point, SSR 96-5p, which "clarif[ies] Social Security Administration policy on how [it] consider[s] medical source opinions on issues reserved to the Commissioner," states in pertinent part,

> Because treating source evidence . . . is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification . . . .

SSR 96-5p. Indeed, "[m]edical sources should be re[-]contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled." Johnson v. Barnhart, 138 Fed. Appx. 186, 189 (11th Cir. 2005) (*per curiam*).

Contrary to Plaintiff's position, the ALJ was not required to re-contact Dr. Fried or Dr. Kulkarni. After weighing the evidence in the record, the ALJ properly determined that the substantial evidence supported the conclusion that Plaintiff was malingering. Although neither Dr. Fried nor Dr. Kulkarni, who both conducted consultative examinations, offered opinions on whether Plaintiff was malingering, sufficient evidence existed in the records of multiple treating and consultative sources to support the ALJ's determination that Plaintiff was malingering. Therefore, the ALJ possessed all of the evidence necessary to determine that Plaintiff was malingering, and thus, the ALJ was not required to re-contact Dr. Fried and Dr. Kulkarni. Cf. Johnson, 138 Fed. Appx. at 189 (finding no reversible error because there was nothing more from the record that the treating physician could have provided the ALJ

in ascertaining the basis for the ALJ's opinion). Simply put, Plaintiff's allegation of error, concerning the ALJ's failure to re-contact Dr. Fried or Dr. Kulkarni is also without merit.

In sum, the Court finds that the substantial evidence supports the ALJ's decision to discount the opinions of Dr. Fried and Dr. Kulkarni based on the determination that Plaintiff was malingering. Furthermore, prior to discounting the opinions of Dr. Fried and Dr. Kulkarni, the ALJ was not required to re-contact them concerning Plaintiff's malingering. Therefore, Plaintiff's allegation of error, concerning the ALJ's decision to discount the opinions of Dr. Kulkarni and Dr. Fried based on the ALJ's determination that Plaintiff was malingering, is without merit.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 8th day of February, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE